ORIGINAL

Bernard Hill
    J76544
California Correctional Institution
P.O.Box 608
Tehachapi, California. 93581

FILED

JUL - 9 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRCT OF CALIFORNA

| | |
|---|---|
| Bernard Hill | 08cv 0124-JM (CAB) |
| PETITIONER | |
| v. | Petitioners Reply And Traverse To Respondents Answer To First Amended Petition For Writ OF Habeas Corpus Memorandum Of Points And Authorities In Support Thereof |
| J. W. Sullivan, Warden, et. al. | |
| RESPONDENT | |
| | Judge: The Honorable Cathy Ann Benciengo |

CR

# Table of Authorities

Mathew v. United States
485. U.S. 58
108 S.Ct. 883
99 L. Ed 2d 54 (1988)                    Page
                                         1A.

People v. McIntire
23 Cal. 3d 742
591 P.2d 527
153 Cal. Rptr. 237 (1979)        1B. 4. 10. 11.

Crane v. Kentucky
476 U.S. 683
106 S.Ct. 2142
90 L Ed. 2d 636 (1986)              3.

United States v. Watson
(3d Cir 1973) 489 F 2d 504        4. 13.

People v. Wolcott
(1983) 34 Cal. 92
192 Cal Rptr. 748                  9.

United States v. Klosterman
(3d Cir. 1957) 248 F. 2d 191
69 A.L.R. 2d 1390                 10.

United States v. Bunell
280 F. 3d 46. 49-50
1st Cir. 2002.                    14.

Table of Authorities (continued)

Delaware v. Van Arsdall
(1986) 475 U.S. 673. 106 S.Ct. 1431
89 L. Ed. 2d 674                    17.

United States v. Bagley
473 U.S. 667. 87 L. Ed 2d
481.                               23.

Davis v. Alaska
415 U.S. 308, 318
94 S.Ct. 1105. 39 L. Ed.
2d 347 (1974)                      23.


Statutes

14th Amendment
United States Constitution      2. 3. 9.

28 U.S.C. § 2254 (d)               3.

Antiterroism and Effective
Death Penalty Act of 1996
(A.E.D.P.A.)                        3.

Health and Saftey Code
11552 (a).                          7.

6th Amendment
United States Constitution       23

# Table of Authorities (continued)

## Statutes (continued)

Page.

Judicial Council Of
California Criminal
Jury Instructions
January 2006 Edition
#3408 Entrapment        1c. 12. 13. 15.

# Table of Contents

Statement of Facts                                    1.

Argument.

      Petitioner Produced
      Evidence To Support
      A Defense of Entrapment    1A.

The California Courts Has
Adopted The Ojective
Entrapment Doctrine
The Undercover Officer
Found It Necessary To
Ask For Narcotics
Numerous Time This
Fact In Evidence Should
Have Been Tried By The
Jury.                                                1B.

Respondent's Argument
That The Trial Court's Refuseal
To Give The Entrapment
Jury Instructions As The
Petitioner's Claim Of A
Constitutional Violation
Is Erroneous And
Misleading                                          3.

# Argument (continued)

Theres' Evidence
Petitioner Lack
Propensity To Commit
The Crime                    4.

Lacking Propensity
Evidence                     5.

Theres Evidence Of
Voluntary Intoxication
Petitioner Lacked The
Requisite Specific
Intent                       8.

Petitioner Lacked
The Requisite Specific
Intent                       9.

Respondents Argument;
Alternatively, Hills' Claim
Fails Because The California
Court Of Appeal Reasonably
Determined The Evedence
Did Not Warrent Instructions
ON Entrapment; Here Fails.
Respondants Argument Only
Made Reference To A Partual
Of The Evidence On
Record                       10.

Argument (continued)

Respondent Argues; As
Far As Third Party
Manipulation, The Court
Of Appeal Found There
Was no Evidence That
The State Used King
As Their Agent: Untrue. 10.

Respondent's Argument
That There Isn't Any
Evidence That The
Co-defendant Pressured
Petitioner To Commit
The Charged Offenes;
This Argument Is
Misleading And Lacks
Merit                        13.

Respondant's Argument
Claims That Sense The
Co-defendant Was Just
Contacted Twice It Can't
Qualifi As Entrapment;
This Claim By Respondent
Is Misleading          14.

Respondent's Argument
Useing The Court Of Appeal's Ruling
Alledging Insufficient Entrapment
Evidence: Fails          15.

# Argument (continued)

Respondent Argument.
That The California
Court Of Appeal
Reasonably Rejected
Petitioner's Confrontation
Clause Claim; Any Error
Was Harmless...
Must Fail                    16.


Respondent's Argument
That Officer Chavez's
Testimony Is Consistant
With Officer Peterson's
Testimony Rearding
The Type Of Wire
Device That Was
Used Is Erroneous
And Not Supported
By The Record        21.


Conclusion        24.

## Statement of Facts

On October 14, 2005, Petitioner was walking along the sidewalk on the 400 block of 15th street in San Diego. Petitioner was under the influence at the time. Petitioner had in his hand a cigerette lighter and a glass pipe. As Petitioner was walking along, alone, Carla King stopped Petitioner, approached him, and said "here hand him this". Petitioner handed an object to a person standing to his immediate left. The person in which Petitioner handed the object to, and Carla King both walked away from Petitioner. Petitioner remained standing at the spot in which he was stopped, alone. As Petitioner was standing alone, he was approached by uniformed Police Officers, as the Police Officers approached, Petitioner dropped the cigerette light and glass pipe. Carla King and Petitioner were both arrested and charged with sales of a controlled subtantnce.

1.

## Petitioner Produced
## Evidence To Support
## A Defense Of Entrapment.

The Court has recognized as a matter of federal statutary and common law, a criminal defendant is entitled to instructions on defense for which there exisits evidence sufficient for a reasonable jury to find in his favor. Mathew. v. United States, 485. U.S. 58. 63. 108 SCt. 883, 99 L. Ed. 2d. (1998): Fed. R. Crim Pro § 31 (c).

In the instant case:

The jury may have determined that, how is it that, the co-defendant indicated to the undercover officer that she did not want to have any thing to do with him, yet both the co-defendant and Petitioner were arrested and charged with the offense, was there "any evidence" indicateing manipulation on the part of law inforcement?

The Court: In Mr Hill's case, even if we assume that the Officer's conduct to Ms King would have been entrapment as to her, she didn't pass that conduct on to Thr Hill. She didn't badger Mr. Hill the same way the Officer badgered her 3. RT. 270... The test for entrapment in California is objective and focuses on police conduct. The badgering by the Officer tword Ms King may have induced her to aid the Officer in the crime.

1A.

The California Courts Has Adopted The Objetive Entrapment Doctrine. The Undercover Officer Found It Necessary To Ask For Narcotics Nummerous Times This Fact In Evidence Should Have Been Tried By The Jury.

The Supreme Court of California held. "The function of... enforcement officials is to investigate, not instigate, crime; to discover, not to promote, crime" Improper governmental instigation of crime is not immunized because it is effected indirectly through a pliable medium. People v. McIntire 23 Cal. 3d 742; 591 P.2d 527; 153 Cal Rptr 237; 1979 Cal. Lexis 225

In the instant case; The Court: But the primary reason is that we know that there was no entrapment conduct, no harassing, no cajoling, no preying on sympathy, no offer of excessive consideration directed at Mr. Hill. Anything that might even approach that kind of conduct was directed only to Ms. King. 3RT 270.

18.

If an Officer or his agent simply gave the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment.. Judicial Council Of California Criminal Jury Instructions January 2006 Edition #3408 Entrapment.

In the instant case; Officer Peterson first contacted the co-defendant, and asked her for a 2-0, Officer Peterson testified that the co-defendant was unwilling to participate in his quest for narcotics, 3RT. 134. At that point, after he was rejected, Officer Peterson lefted the area, 3RT. 142. The second time Officer Peterson requested narcotics from the co-defendant, he testified that she continually told him "No" to his numerous request for narcotics, 3RT. 143, at one point during his testimony, Officer Peterson discribed his conduct as pretty persistant, 2-22-06, RT. Pg. 34, regarding his numerous request. The factual evidence shows that Officer Peterson seemed to do more than give the co-defendant an oppertunity, or try restrained steps to gain the co-defendants confidence regarding the charged incident. Petitioner's 14th Amendment rights guranteed under United States Constitution were violated. Petitioner was not allowed by the trial court to have the above facts in evidence tried by the jury on behalf of his defense.

1c.

Officer Peterson testified that he had asked the co-defendant for narcotics, and she said she did not know him. 3RT,117.

Officer Peterson testified that he left the area, and upon his return to the area he again asked the co-defendant for narcotics. 3RT,142.

Officer Peterson testified that he indicated to the co-defendant that he was okay that she could trust him. 3RT,117.

Officer Peterson testified that he was pertty persistant regarding his requests during his contacts with the co-defendant. 2-22-06, RT,34

Officer Peterson affirmed in his testimony that the co-defendant said "No" to his numerous request for narcotics. 3RT,143

Officer Peterson affirmed in his testimony that the co-defendant became scared. 3RT,143

Officer Peterson testified that it was at the point when the co-defendant became scared that she approached Petitioner when he passed by, and said "Here had him this." 3RT,167

Petitioner's due process rights garanteed under the 14th amendment to the United States Constitution were violated in that, the trial court refused Petitioner his rights to present factual evidence to the jury, to be tried by the jury, on behalf of Petitioners defense. The denied defense evidence, was to be tried under the auspices of the entrapment jury instructions gide lines.

2.

## The Respondant's Argument That The Trial Court's Refuseal To Give The Entrapment Jury Instructions As The Petitioner's Claim of A Constitutional Violation, Is Erroneous And Misleading.

In Petitioner's Writ of Habeas Corpus, ground one, states, Petitioner's rights to a jury trial as guaranteed by the United States Constitution were violated. The thrust of Petitioner's Claim is that, Petitioner has a fundamental right to have evidence on his behalf tried by the jury. Petitioner's due process rights guranteed under the 14th Amendment to the United States Constitution were violated when the factual evidence was not tried. Federal habeas corpus relief is available only when a state court decision is contary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the State Court evidence. 28 U.S.C. § 2254 (d). Antiterrorsm and Effective Death Penalty Act of 1996 (AEDPA). The Court has recognized that "the Constitution guarantees criminal defendants a meaninful apportunity to present a complete defense." Crane v. Kentucky. 476 U.S. 683, 690. 1063 Ct. 2142, 90 L. Ed. 2d 636 (1986). In the instant case: The trial court's refuseal to give the requested jury

3.

instructions, caused factual evidence to
go without being tried. 3 RT. 270.


### There's Evidence Petitioner Lack Propensity To Commit The Crime.

In re. People v. McIntire, because defendant
claims error in the court's refusal to instruct the
jury on entrapment, she need not establish the defense
as a matter of law. Failure to give entrapment instruc-
tions constitutes reversible error when substantial
evidence to sustain the defense is offered or introduc-
ed. (2b) We must therefore determine whether
defendant produced at her trial "(1) evidence that
Government initiated the crime, regarless of the
amount of pressure applied to the defendant, and
(2) any evidence negating the defendants propensity
to commit the crime.". People v. McIntire. 23 Cal. 3d
742., citing United States v. Watson (3d Cir 1973)
489 F. 2d 504, 509.. In the instant case; there's
evidence that Officer Peterson initiated the crime.
Q. Officer Peterson, is buying cocaine a crime
A. Yes.    2-22-06. RT. Pg. 32 lines 15-16.

Q. When you walked up to the female and had the
first conversation, what was it about?
A. When I first walked up to Ms King. I asked her if
she had a 2-0.

4.

1, Emphasis mine.

Q. And who initiated the conversation
A. I did. 3RT. 134

## Lacking Propensity Evidence

Petitioner feels that there's over wheleming evidence negating Petitioner propensity to commit the crime. ① Petitioner had no intent on selling anything. Petitioner was a passer-by, who had walked pass the spot where Officer Peterson and the co-defendant were standing. Petitioner would have continued on his way had he not been stopped.

Q. Officer Peterson what was defendant doing when you saw him?
A. You were walking northbond.
Q. Was he selling drugs when saw him?
A. No. I did not see you selling drugs. 12-15-05 Prelim. Pg. 13.

① Petitioner had no knowledge of what was going on at the time he was stopped and approached. Officer Peterson's testimony allegeding Knowledge seems inconsistant, and conflicting.

Q. Okay. Officer, and one of the-- even today you said, Carla King approached me and said "Bernard, he wants a 2-0"
A. Yes
Q. As apposed to, "Bernard here, hand him this." Both of them you have testified as to what was said

5.

when my name -- you said my name was mentioned once and in both times you have said conflicting statements as to what was said at the time? isn't that correct?

A. There was two statements. I mentioned that the first time I said "Bernard" -- she said, Bernard, here, he wants a 20," and in the prelim transcripts does say, Bernard here hand him this. (Prelim came 1st [3]

Q. So it's inconsistant as to what was said at that particular time, correct?

A. Yes.

Q. Okay, and with regards to the transcripts, you gave affirmative that no drugs was mentioned at that time when I was in your immediate presence, correct?

A. Yes

Q. And you also said that Carla King was there also inst that correct?

A. Yes. during time of the transaction. 3 RT, 165

Q. And going down to 19, the Court Clarified the question, it said, did she use any words conveying rock cocaine? and you said,"No, she didn't", isn't that correct?

A. Yes. 3 RT 166, 167.

Q. And on page 42, the question was, and so the defendant, me, was approached and someone said here hand him this, correct? and your answer is?

A. The answer that I stated was, that's correct 3. RT. 167

6.

[3] emphasis mine

Based on the testimonies of Officer Peterson, there's reasonable doubt that Petitioner had any knowledge of what was going on when, Petitioner passed by Officer Peterson and the codefendant, there was no dialogue takeing place. 3 RT 166., and there never was drugs mentioned by the co-defendant, when she addressed Petitioner. 3 RT 165, 3 RT 167.

(c) Petitioner was under the influence at the time.

(D) Respondant avoided evidence, that the witness for the prosecution testified that Petitioner did not look sober in his booking photo taken on the day of the incident. This is a specific intent case.

Offen times when theres a drug related arrest, a urin analysis is taken of the suspect. Heath and Safety Code 11552 (a). In the instant case: Petitioner indicated to the court, pursuant to the court's inquire that, he in fact injested cocaine within an hour of his arrest. Officer Peterson affirmed in his testimony that, had Petitioner been givin a urin analysis at the time of his arrest, Petitioner would have tested positive. for under the influence. 3 RT 160. Officer Peterson testified that Petitioner droped a cigarette lighter and pipe 3 RT 153.. Officer Peterson testified that the pipe was used for injesting cocaine. Officer Peterson testified that he tested the pipe and it tested positive for cocaine use. Officer Peterson testified that smokeing cocaine can induce abnormal behavior. 3 RT 153, 154. Officer Peterson testified that Petitioner never moved from the spot, once he was stopped by the co-defendant

7.

3 RT 156. Officer Peterson testified that even though both he and the co-defendant walked away, Petitioner never moved, and Petitioner was at that same spot when the uniformed Officers arrived, and Petitioner still did not move. 3RT 156, 157. Respondant only mentioned that investagter Geary Mc Murray, a retired Police Officer of 72 years, had testified that Petitioner did not look sober in his booking photo. (Respondant's answer Pg. 7). Respondant avoided the testimony of the prosecution's witness, Officer Roberto Lemus, a San Diego Police Officer of 8 years at the time, who also testified that Petitioner did not look sober in his booking photo taken on the day of the incident. 3 RT 213, 214.

## There's Evidence Of Voluntary Intoxication Petitioner Lacked The Requisite Specific Intent.

Evidence of voluntary intoxication is admissible soley on the issue of whether or not the defendant actully formed a required specific intent. Penal Code 22 (b). . . In the instant case, it was established pursuant to the trial court's inquire that, Petitioner had injested cocaine within the hour of his arrest, and Officer Peterson affirmed in his testimony that, Petitioner would have tested positive for under the influence, had he'd been tested at the time of his arrest. 3RT. 160

## Petitioner Lacked The Requisite Specific Intent

Specific intent crime; a moutive, a predertermined mindset, a precise criminal act inorder to accomplish a further criminal consecquence. Knowledge of the act. People v. Wolcott (1983) 34 Cal. 92 (192 Cal Rptr. 748: 665 P. 2d 520)

In the instant case; Evidence shows Petitioner never said anything, at anytime, even before, during, or after the alledged transaction. 3 RT, 156. Evidence show Petitioner was never promised anything either by Officer Peterson or the co-defendant, nor did Petitioner ask for anything. 3 RT. 154 thru 157. Petitioner lacked the specific intent. Petitioner was a passer by, Prelim §13, with no precise criminal act inorder to accomplish a further criminal consecquence. Had Petitioner been allowed to present these facts of evidence to the jury, the jury may have determined, that, Petitioner was in fact, based on the evidence, entraped. Petitioner's constitutional rights to have factual evidence on behalfe of his defense, "not be presented to the jury to be tried," violates his 14th Amendment rights guaranteed by the United States Constitution.

9.



Respondant's Argument;
Alternatively, Hill's Claim
Fails Because The California
Court Of Appeal Reasonably
Determined The Evidence
Did Not Warrant Instructions
ON Entrapment, Here Fails.
Respondant's Argument Only
Made Reference To A Partual
Of The Evidence On Record.

Respondant pointed out that the Court
of Appeal stated Hill acknowledged no law
enforcement Officer ever appoached him to
attempt to get him to commit the charged offense
(Respondant answer Pg. 10). This argument fails. Petition-
er's claim is that, he was entraped by way of
manipulation of the co-defendant by law
enforcement. 3 RT. 268, 269. Petitioner pointed
out to the trial court, People. v. Mc Intire 23 Cal.
3d 742; 591 P2d 527, and United States v. Klosterman
(3d Cir. 1957) 248 F.2d 191, 195-196 [69 A.L.R.2d 1390], as his
points of authority. In the above case references, the
third party approached the defendant regarding
the commison of the charged offense, never, in
the above case citings were the defendants
approached by government.

Respondant argues; As far as third party
manipulation, the Court of Appeal found there was
no evidence that the State used King as their agent,
(Respondant answer Pg. 10). Respondant is in correct.

10.

In re. People v. The Intire, the California Supreme Court held: If such were the law, **unconcionable law enforcement activity**[2] would be premitted so long as the target of entrapping agents was not reached directly but indirectly through the use of unsuspecting dupes. Nothing in the doctrine of enrapment requires us to allow by indirection such a irrational and disfunctional result.

In the instant case. It seem that Officer Peterson used manipulation of the co-defendant.

Direct examination.

Q. When she indicated to you that she didn't know you, whats the next thing you remember happening at that point in time?

A. After that I stated again I just want a 2.0 tring to just let her know that I was okay.

Q. When you say. tring to let her know that you were okay, what do you mean by that?

A. Just letting her know that she could trust me.

Q. What did she do at that point?

A. At that point she stated she was scared. 3 RT. 117

Cross examination

Q. And it says. I walked -- this is you -- I walked up to Ms King and asked her for a 2-0, which is the street term for a 20 worth of narcotics. Ms King looked at me and stated that she did'nt know me. I tried to be persistent.

11.

emphasis mine [2]

Officer, isn't persistant a firm bold way of persuation?

A. No.

Q. But you continually tried to. Against her rejections, you continually tried to get her to participate in your quest to purchase drugs; isn't that correct?

A. I tried to buy the narcotics from her. Yes.

Q. And she said, in a word, "No".

A. Yes, she did.

Q. And Officer, she bcame scared, correct?

A. Yes.

3 RT, 14 J.

Another example of entrapment would be conduct that would make commisson of the crime unusally attractive to a normally law-abiding person. Such conduct might include a gurantee that the act is not illegal or that the offense would go undetected, an offer of extraurdinary benefit or similar conduct. . Judicial Council of California Criminal Jury Instruction January 2006 Edition #3408 Entrapment.

Law enforcement conduct which indicates to a normally law-abiding person that it's okay, and or they can trust the Officer regarding committing an unlawful act, seem to be a form of entrapment as outlined above.

In the instant case; Officer Peteson testified to the fact that he indicated to the co-defendant that he was okay, and that the co-defendant

12.

could trust him, this stems from the fact in evidence that the co-defendant did not want to have anything to do with the Officer. 3 RT 117, 3 RT 143.

Respondant's argument that there isn't any evidence that the co-defendant pressured Petitioner to commit the charged offenses; This argument is misleading and lacks merit.

The Respondant alledged that the Court of Appeal was correct in that there wasn't any evidence that the co-defendant pressured Petitioner to commit the charged offense, (Respondant answer Pg. 10). This argument is misleading and lacks merit. The pre-requisite, to the trial court giving of the entrapment jury instructions are, (1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant," and (2) any evidence negateing defendant propensity to commit the crime. United States v. Watson (3d Cir 1973) 489 F.2d 504,509,... Also, as pointed out in the #3408, entrapment jury instructions. It states, "In evaluating this defense, you should focus primarily on the conduct of the Officer". In the instant case; Under cover Officer, Officer Peterson, testified that he asked the co-defendant for narcotics, she refused, he then left the area, upon returning to the area, Officer Peterson again contacted the co-defendant, and again asked for narcotics, he testified that

13.                    emphasis mine"

he indicated to the co-defendant that he was okay, that she could trust him. Officer Peterson testified that he was pertty persistant. Officer Peterson affirmed in his testimony that the co-defendant said "No" to his persistant request for narcotics. Officer Peterson affirmed in his testimony that the co-defendant became scared. It was not untill the co-defendant became scared, that she aided Officer Peterson in his quest for narcotics, she stopped Petitioner, a passer by, and said "here hand him this." Respondants argument fails. As Petitioner pointed out by the points of authority, and the entrapment jury instructions, it is not the amount of pressure aplyed to Petitioner by the co-defendant, rather, it is the conduct of the officer. Petitioners constitutionals right were violated, the above factual evidence should have been tried by the jury.

Respondant's argument claims that cense the co-defendant was just contacted twice it can't qualifi as entrapment. This claim by Respondant is misleading.

In re. United States v. Bunell, the claim of entrapment involed "one contact" by government. United States v. Bunell 280 F.3d 46, 49-50 1st Cir. 2002. Entrapment is not contengent on a set number of contacts by law enforcement, rather it is based on what

14.

accured as a result of the contact. This fact is inbeded in the entrapment instructions itself.

In evaluating the defense, you should focus primarily on the conduct of the officer. However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevent circumstances, including events that happened before the crime, the defendant's responses to the officer's urging, the seriousness of the crime, and how difficult it would have been for law enforcement officers to discover that the crime had been committed. Judicial Council of California Criminal Jury Instructions January 2006 Edition #3408. Entrapment.

In the instant case; Officer Peterson made a second contact with the co-defendant cause he was rejected the first time;

Q. When you walked up to the female and had the first conversation, what was it about?

A. When I first walked up to Ms King, I asked her if she had a 2-0.

Q. And who initiated that conversation?

A. I did.

Q. And Officer, isn't it a fact that she was unwilling to participate in your quest to purchase drugs?

A. In the beginning, Yes. 3 RT 134.

15.

The sequence of events regarding the second contact by Officer Peterson, and the co-defendants response. Officer Peterson testified that he indicated to the co-defendant that his buying of drugs was okay, that she could trust him. 3 RT 117. Officer Peterson testified that he was persistent with the co-defendant in his quest to buy drugs, and affirmed in his testimony that the co-defendant said "No" to his quest for drugs. 3 RT 142, 143. Officer Peterson affirmed in his testimony that the co-defendant became scared. 3 RT 143. Respondant argument regarding the number of contacts as the principal for entrapment is misleading. Rather it is the conduct of the officer "within the contact." #5408 Entrapment Jury Instructions.

Respondant's argument useing the Court of Appeal's ruling alledging insufficient entrapment evidence. (Respondent answer Pg. 11), Fails.

Petitioner has illousated by the perponderance of the factual evidence on state record, that he would have been able to present, and support a defense of entrapment, also points of authority. Petitioner's constitutional rights to a jury trial were violated, factual evidence on behalf of the defense was not tried by the jury.

16.

The Respondent's argument
that the California Court Of
Appeal Reasonably Rejected
Petitioner's Confrotation Clause
claim; Any Error Was Harmless...
Must Fail.

The right to confront includes the right
to cross examine the adverse witness on matter
on their credibility. Trial court judges retain wide
latitude insofar as the confrontation clause is
concerned to impose reasonable limits on cross
examination. Delaware V. Van Arsdall (1986)
475 US 673, 679 (106 S.Ct 1431, 1435, 89 L.Ed.2d 674).
In the instant case; It seems unreasonable to
deny Petitioner his constitutional right to
confront the adverse witness when the denial
allegations by the trial court, and the prosecution
are not supported any where by the state evidence.
The trial court at first, had no problem with
Petitioner's motion to recall Officer Peterson to
the witness stand. 3 RT 236. Petitioner did not
have to show cause until the prosecution
informed the trial court that, their main
witness, Officer Peterson, could not make it
back to the court house by the time set by
the trial court, (3:00 Pm). 3 RT 236

The Court; Mr. Hill, I need from you what is
called an offer of proof.
3 RT 237.

17.

The Court: Do you have some new area that you need to examine him about?

Mr. Hill: Yes, Your Honor, I do. 3 RT. 237. Evidence on state record will show that Petitioner had never questioned Officer Peterson regarding what kind of communication device he was useing. Petitioner pointed out to the trial court, that he would like Officer Peterson to answer to the fact that the audio recording has his voice on it, when he testified that none of his communications were ever recorded. Petitioner wanted Officer Peterson to answer to the fact that he is heard ingaged in a two-way communication, when he testified that he only had a one-way device in which he could only transmit but not receive. 3 RT. 238.

The trial court concluded that, at the time Officer Peterson could be heard on audio ingaged in a two-way communication, was when he was in the company of Detective Zaldivar, and or the other Officers, and thus Petitioner was denied his constitutional rights to confront the adverse witness. 3 RT 240. Petitioner feels that the courts denil was base on speculation. Petitioner should have been givin the constitutional right to confront Officer Peterson, and have him answer exactly, what kind of device he was useing during the opperation.

18.

At the particular time in question, Officer Peterson was not in the company of Detective Zaldivor. At the time, Detective Zaldivor was still the eye, and south bound, in the 300 block of 15th street, while Officer Peterson was walking north bound in the 400 block of 15th street, a block away.                    Cad tape transcripts, Pg. **5**

Officer Peterson was not in the company of any other officers at the time. After the trial court alledged that the tactical recording made by Officer Peterson happen while he was in the company of Detective Zaldivar and or the other Officers, and the trial court stated "I'm not going to allow you to recall." 3 RT 240... Petitioner States as follows;

Mr. Hill: Well, your honor, I would like to point out on line 27. He says, a guy is trailing Vern on my side.

The Court: What page?

Mr Hill: On page 5, line 27. it says, Jose there is a guy trailing Vern on my side, black male, black hat, flannel with a-- so apparently he's walking away. He's being trailed. 3 RT 240, 241.

Mr. Hill: I can play it.

9

19.

The Court: No, I'm looking at page 6 line 12 "Hey, Vern, it's positive on both and apparently to the other Officers "Hey, Vern says the...
3 RT 241

"Hey, Vern,... seems to be a direct address to Officer Vernon Peterson.
"Hey, Vern says... seems to be a directive that was initiated by Officer Vernon Peterson. This is speculation on part of the trial court, Officer Peterson should have been held to answer to what kind of communication device he had.
    Officer Peterson can be heard engaged in a two-way recorded communication:
    Hey, Vern, do you remember if the light was blue? Yea, it was a blue lighter. Recorded SDPD Communications transcripts October 14, 2005 Pg6. Channel 32.

Q. As an undercover officer attempting to make a buy or making a buy, can you communicate directly with the uniformed arresting officers?
A. No, I can't.   3. RT 110

    Officer Peterson's above testimony, is not consistant with Detective Zaldivar, the officer that was assigned to watch the undercover officer, Officer Peterson.

20.

Q. Is at the point in time when you're making visual observation of the undercover officer, you put out descriptions of the clothing that the female subject is wearing for other officers; is that right?

A. Yes.

Q. Is that information from your own observation, or are you getting that from the undercover officer, Officer Peterson?

A. The majority of time it is from our observation. Sometimes the undercovers will also air the description of the person they're contacting. 3RT.222-223

Respondant's Argument That Officer Chavez's Testimony Is Consistant with Officer Peterson's Testimony Regarding The Type Of Wire Device That Was Used Is Erroneous And Not Supported By the Record.

Officer Peterson testified that he was wearing a one-way wire, and could transmit but not receive. 3RT 109, 110. Officer Peterson also testified that there was a tactical tape of the frequency that they were using. 3RT.136 Consistant with Officer Petersons testimony, Officer Chavez testified on cross-examination that the audio recording was from a

21.

channel that the Officers use to communicate with each other. Officer Chavez also clarified that the wire is something separate, and that Officer Peterson could only transmit. 3 RT 194. (Respondents answer Pg 11, 12).

A closer look at Officer Chavez's cross-examination regarding the issue of Officer Peterson's wire device, shows that Officer Chavez's cross-examination testimony is not consistant with Officer Peterson's testimony.

Q. At the beginning of the CAD, it's a statement as to what channel that the CAD's on, are you familiar with that?

A. Do you want me to look at that?

Q. I don't know if it's on here. On the tape it does, it says it tells the date, and it tells the location and it tells what channel you communicted --

A. OH. are you reffrring to investigative tae 6?

Q. On the tape it says channel 32.

A. I've never heard of channel 32. Sorry.

3 RT 193.

Officer Chavez admitted that he was not familiar with channel 32, thus he couldn't fully know the device Officer Peterson used on channel 32. All Officer Chave's references were made to a different channel.

22

Based on the evidence, Respondent's allegations aren't supported by the record. Petitioner should've been able to have Officer Peterson answer to what kind of wire device he was wareing that abled him to conduct a two-way communication, and abled him to be recorded, and, was Officer Peterson capable of a two-way communication the intire time he was in the area? In Davis v. Alaska... The Supreme Court held that the denial of the right of effective cross examination was "constitutional error of the first magnitude'" requiring automacic reversal. Unite States v. Bagley, 473 U.S. 667, 87 L. Ed. 2d 481. quoting Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L. Ed. 2d 347 (1974). In the instant case: Petitioner's 6th Amendment rights to confront the adverse witness guranteed under the United States Constitution were violated. Officer Peterson was not in the company of Detective Zaldivar, during his two-way communication, nor was he with another officer at the time. Officer Peterson was still in the area being followed by someone in a black hat. The prosecution said it was a sargent's voice on the tape but gave no name. 3 RT 240, 241. The factual evidence shows that it was Officer Peterson, talking to Officer Chavez. 3 RT. 194. Officer Peterson was on channel 32, Officer Chavez testified that he was not familiar with the communication capability of channel 32, which Officer Peterson was on. 3 RT. 193.

23.

# Conclusion

Petitioner has presented to this Federal District Court, evidence to support his claim that his constitutional rights were violated. Factual evidence on behalf of Petitioner's defense were not allowed to be tried by a jury of his peers.

Regarding the violation of Petitioners constitutional rights to confront the adverse witness, the trial court at first granted Petitioner's motion to recall Officer Peterson until it was discovered that Officer Peterson had left the court house, and could not make it back by the time appointed by the court. Subsequently the court denied Petitioner his constitutional rights to confront the adverse witness. Respondent's arguments, the Prosecution's allegation, and the trial courts denial were all based on speculation that wasn't supported anywhere by state evidence. These miscarriages of justice warrents reversal of the conviction.

Dated. July 2, 2008          Sign _Germane Hill_

24.

PROOF OF SERVICE

I, _Bernard Hill_ do hereby delare and certify that on the _1_ day of _July_, 20_08_, I served a true copy of the following documents:

by placing the same in a sealed envelope addressed to:

and depositing said envelope into the U.S. Mail systems as designated by the California Department of Corrections policy under Title 15 Sec. 3141 & 3142 of the California Code of Regulations. The facility that processed this mailing is located at:
Facility: _Tehachapi Correctional Institution_
Address: _P.O. BOX 608_
City: _Tehachapi_        State:CA._93581_

I declare under the penalty of purjury that the foregoing is true and correct based upon my own personal knowledge. This mailing was executed on the _1_ day of _July_, 20_08_.
by: _Bernard Hill_        Inmate No.: _J76544_.

Please take notice that this mailing is pursuant to Houston vs. Lack (1988) 487 U.S. 266, as referenced to the "Mailbox Rule" on the date appearing above and upon the outside seal of the envelope and endorsed by correctional personnel.