UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD HILL,<br><br>                                    Petitioner,<br><br>     v.<br><br>JAMES TILTON, Warden,<br><br>                                    Respondent. | Civil No.    08cv0124-JM (CAB)<br><br>**REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Bernard Hill, a state prisoner proceeding *pro se,* has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, raising two grounds for relief.  The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities, Petitioner's Traverse, and all supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **RECOMMENDS** that the Petition be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Parke v. Baley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  Because Petitioner has not attempted to rebut the factual findings made by the state court, the following facts are taken from the California Court of Appeal opinion in *People v. Hill*, No.

D048917, slip op. (Cal. Ct. App. July 31, 2007):

   *A. The People's evidence*

   On October 14, 2005, officers from the San Diego Police Department were conducting an undercover narcotics operation in the 400 block of 15th Avenue in San Diego. San Diego Police Officer Vernon Peterson saw a female, later determined to be Carla King, who appeared to be "adjusting the front portion of her pants." Officer Peterson believed that King was taking some type of controlled substance from her pants. As Officer Peterson started to approach King, she walked away from him, toward two men. King began talking with the two men. Officer Peterson walked up to King and asked her if she had a "2-0," which is slang for $20 worth of narcotics. King was standing near the two men at the time. King responded that she did not know Peterson. Officer Peterson walked away briefly, and then approached King again and said that he "just wanted a 2-0." King responded by stating that she was scared.

   At this point, Hill walked up to the group. King said to Hill, "Bernard, here, he wants a 20," and handed Hill an off-white substance. King then walked away, accompanied by the two men with whom she had been talking. Hill handed Officer Peterson the substance, which police later determined was .26 grams of cocaine base. Officer Peterson gave Hill a prerecorded $20 bill. After giving Hill the $20 bill, Officer Peterson alerted other police officers who were monitoring the transaction that a sale had been completed.

   As San Diego Police Officer Jose Chavez arrived to arrest Hill, Hill dropped a lighter and a glass pipe on the ground. The pipe tested positive for cocaine. While Officer Chavez was handcuffing Hill, Hill stepped on some "crumpled-up money." Officer Chavez saw Hill attempt to push a bill toward a nearby planter box. Officer Chavez recovered the money, which police determined was the prerecorded $20 bill that Officer Peterson had given Hill.

   After police transported Hill to the police station, Officer Peterson advised Hill of his "constitutional rights." Hill indicated that he understood those rights and that he was willing to waive them and speak with Officer Peterson. Officer Peterson asked Hill what had happened during the incident. Officer Peterson described Hill's response as follows: "[H]e was walking towards Island Avenue and someone told him, 'Don't you know him?' He said someone gave him a piece of rock and he gave it to me."

   The People also presented evidence regarding a 1999 incident in which Hill sold cocaine base.

   *B. Defense evidence*

   In an apparent attempt to establish that Hill did not harbor the requisite intent, a defense investigator testified that Hill did not appear to be sober in a photograph that was taken after his arrest. During closing argument, Hill argued that he had been "high" at the time of the transaction, that he had "no intent to sell," and that the evidence the People presented did not demonstrate that he had "knowledge and an intent."

(Lodgment 3, at 2-4.)

///

///

## II. PROCEDURAL BACKGROUND

Petitioner represented himself at trial. A jury convicted Petitioner of selling cocaine base (Health & Safety Code § 11352(a)) (count one), possessing cocaine base for sale (§ 11351.5) (count two), and possessing narcotics paraphernalia (§ 11364) (count three). (Lodgment 7, Clerk's Transcript, at 170-72.) Petitioner had also been charged with four prior narcotics-related convictions and one prior strike conviction, and Petitioner admitted to all the prior convictions. (*Id.* at 173.) Petitioner was sentenced to a total term of 12 years in prison, comprised of eight years on count one pursuant to the Three Strikes Law, three years for one of the four prior narcotics-related conviction enhancements, and one year for one of the prior prison term enhancements. The trial court imposed a sentence of 180 days on count three, to be served concurrently with the sentence imposed on count one. The court stayed the sentence on count two. Finally, the court struck the remaining enhancements. (Lodgment 6, Reporter's Appeal Transcript, Vol. 6, at 381-85.)

On October 16, 2006, Petitioner appealed his conviction to the California Court of Appeal. (Lodgment 1.) The state appellate court affirmed the judgment on July 31, 2007. (Lodgment 3.) On September 7, 2007, Petitioner filed a petition for review in the California Supreme Court. (Lodgment 4.) The petition for review was denied on October 17, 2007. (Lodgment 6.) On January 22, 2008, Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court. [Doc. No. 1.] On February 22, 2008, he filed an amended Petition. [Doc. No. 4.] On April 24, 2008, Respondent filed an answer to the Petition. [Doc. No. 6] On July 9, 2008, Petitioner filed a Traverse to matters raised in the Answer. [Doc. No. 10.]

## III. DISCUSSION

**A. Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (emphasis added).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. *Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record "to determine whether the state court clearly erred in its application of controlling federal law." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer,* 538 U.S. at 75-76). However, a state court need not cite U.S. Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). As long as neither the reasoning nor the result of the state-court decision contradicts U.S. Supreme Court precedent, the state court decision will not be "contrary to" clearly established federal law. *Id.*

///

B. Analysis

Petitioner argues in his federal Petition that he was denied his constitutional right to a fair trial, because: 1) the trial court refused to provide jury instructions on the defense of entrapment; and 2) the trial court refused to recall the undercover officer so that Petitioner could renew cross-examination. (Pet. 6, 8.)[1] Respondent argues: 1) failure to instruct on entrapment is not grounds for federal habeas relief; and 2) any error in not re-calling the undercover officer was harmless in light of the strong prosecution case. Respondent also argues the state court's denial of Petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court law.

**1. Claim One**

Claim one of the Petition alleges a violation of Petitioner's right to a fair trial, because the trial court refused to give the jury instructions on the defense of entrapment. Petitioner argues Detective Peterson "used [Carla King] as a tool . . . to bring about" Petitioner's arrest. (Pet. 10.) Petitioner contends there was substantial evidence to warrant a defense of entrapment. (*Id.*) The last reasoned state court opinion that addresses this claim is the state appellate court decision of July 31, 2007, affirming the judgment of the state superior court. (Lodgment 3.) That court found that the trial court was not required to instruct the jury on the defense of entrapment, because substantial evidence did not support the defense. (*Id.* at 19.)

Clearly established Supreme Court law governing jury instructional error is found in *Henderson v. Kibbe*, 431 U.S. 145 (1977):

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, 414 U.S. [141], at 147 [1973], [] not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at 146 [].
> [The] burden is especially heavy [when] no erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.

*Id.* at 154.

///

---

[1] Citations to the Petition refer to Doc. No. 4 and the page numbers assigned by CM/ECF.

1 "[A] criminal defendant is entitled to adequate instructions on his or her theory of defense."
2 *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984); *but see Gilmore v. Taylor*, 508 U.S. 333, 343-44
3 (1993) (finding the right to present a complete defense does not entitled a defendant to a particular set of
4 jury instructions). The allegedly erroneous jury instruction cannot be judged in isolation. *Estelle v.*
5 *McGuire*, 502 U.S. 62, 72 (1991). Rather, it must be considered in the context of the entire trial record
6 and the instructions as a whole. *Id.* Due process of law requires trial courts to instruct the jury on a
7 defense theory if it is "legally sound and evidence in the case makes it applicable." *Beardslee v.*
8 *Woodford*, 358 F.3d 560, 577 (9th Cir. 2004). In California, an entrapment defense requires the
9 defendant to prove governmental involvement in creating the criminal activity and that "the conduct of
10 the law enforcement agents or officers would likely induce a normally law-abiding person to commit the
11 crime." *People v. Barraza*, 591 P.2d 947, 955 (Cal. 1979); *see* CALJIC No. 4.60. Although law
12 enforcement officers may provide the opportunity for a defendant to commit a crime by using
13 "reasonable, though restrained, steps to gain the confidence of suspects," law enforcement officers may
14 not "induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling,
15 importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the
16 crime." *See* CALJIC No. 4.61.5.

17 Under California law, "[a] trial court has no duty to instruct the jury–even at the defendant's
18 request–unless the defense is supported by substantial evidence." *People v. Curtis*, 37 Cal. Rptr. 2d 304,
19 314 (Cal. Ct. App. 1994) (citing *People v. Flannel*, 160 Cal. Rptr. 84, 93 (Cal. Ct. App. 1979)).
20 Petitioner contends that Officer Peterson entrapped him into committing the crime. The state appellate
21 court found there was no evidence that Officer Peterson badgered, coaxed or cajoled Petitioner.
22 (Lodgment 3, at 20.) In fact, the record reflects very little contact between Officer Peterson and
23 Petitioner before the crime was actually committed. Petitioner argues that Officer Peterson's "persistent
24 contacts" with Carla King constituted entrapment. The state appellate court found there was no evidence
25 that the officer used King as their agent, no evidence that King pressured Petitioner, and no evidence that
26 the officer pressured King to commit a crime. (*Id.* at 20-21.) As such, the state appellate court found the
27 trial court did not commit error when it refused to instruct the jury on entrapment.
28 ///

Petitioner has failed to show that he was induced into the commission of a crime by "overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." *See* CALJIC No. 4.61.5.  Nor has Petitioner established he was prejudiced by the trial court's failure to give the requested instruction, because he has not shown a reasonable probability that the result of the proceeding would have been different if the instruction had been given.  There is little likelihood that the jury would have concluded Petitioner had been entrapped into selling the cocaine to Officer Peterson.  A normally law-abiding citizen would not have been induced to hand a bag of cocaine to a stranger under the circumstances of this case.  The evidence did not warrant jury instructions on entrapment.

For the foregoing reasons, the state court's denial of claim one was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court law.  As such, this Court **RECOMMENDS** that this claim be **DENIED**.

**2. Claim Two**

Claim two of the Petition alleges that Petitioner was denied his Sixth Amendment right to confront witnesses, because the trial court refused to recall Officer Peterson. (Pet. 11.)  According to Petitioner, Officer Peterson was wearing a wire on the night Petitioner was arrested.  Officer Peterson claimed in his trial testimony he was wearing a one-way wire.  After Petitioner listened to the audio recording of the wire Officer Peterson was wearing, Petitioner believed it revealed the officer was wearing a two-way wire, because he could hear Officer Peterson in the recording.[2]  After the prosecution rested, and Petitioner had already cross-examined Officer Peterson, Petitioner wanted to recall Officer Peterson to question him about the one-way versus two-way wire discrepancy. (Pet. 11-14.)

The last reasoned state court opinion that addresses this claim is the state appellate court decision of July 31, 2007, affirming the judgment of the state superior court. (Lodgment 3.)  That court found that the trial court did not abuse its discretion when it refused to allow Petitioner to recall Officer Peterson. (*Id.* at 16.)  The trial court based its denial on two reasons: 1) Petitioner had an opportunity to cross-examine Officer Peterson and had access to the recording at the time; and 2) the trial court had

---

[2] In the Petition, Petitioner talks about a "first trial" and a "second trial," but it appears from the record all of this happened in only one trial.

reviewed the transcript of the tape and concluded no relevant evidence could be elicited by recalling the witness. (Lodgment 3, at 16; Lodgment 6, at 236-43.)

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to be confronted with witnesses against him. The right of confrontation is "fundamental and essential to a fair trial [and] is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965) (internal quotations omitted). The Confrontation Clause, however, assures defendants "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Moreover, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

Here, Petitioner wanted to recall Officer Peterson to question him about whether he was wearing a one-way or two-way wire. The trial court found no relevant evidence would be elicited by recalling Officer Peterson on this topic. (Lodgment 6, at 240.) The state appellate court found the trial court did not abuse its discretion. (Lodgment 3, at 16.) The trial court's decision did not violate Petitioner's Sixth Amendment right. He had an opportunity to cross-examine Officer Peterson during the prosecution's case-in-chief. A defendant is denied his Sixth Amendment right of confrontation when the trial court prohibits him from engaging in appropriate cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). Trial courts, however, retain wide latitude under the Confrontation Clause "to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679; *see also Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992). The trial court here acted appropriately under its broad discretion to make a judgment as to what evidence to permit in this circumstance. As the state appellate court noted, whether Office Peterson was wearing a one-way wire or a two-way wire was a collateral issue. (Lodgment 3, at 17 n.6.) Petitioner has not shown that he was prejudiced by the trial court's refusal to allow him to recall Officer Peterson. Whether Officer Peterson was wearing a one-way or two-way wire would not have changed the facts of the case, that Petitioner handed him a bag of cocaine in exchange for money.

Accordingly, the state court's denial of claim two was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court law. As such, this Court **RECOMMENDS** that this claim be **DENIED**.

## IV.  CONCLUSION

After thorough review of the record in this matter and based upon the above discussion, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be **DISMISSED WITH PREJUDICE**. This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 25, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 23, 2008

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge